IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ALYSSA MERKELY, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> STATE OF OKLAHOMA, *ex rel.*, BOARD OF REGENTS OF UNIVERSITY OF CENTRAL OKLAHOMA, *ex rel.*, UNIVERSITY'S OFFICE OF STUDENT CONDUCT, <br><br> Defendant. | Case No.: 21-cv-429-HE <br><br> **(Removed from the Oklahoma County District Court Case No.: CV-2021-806)** |

## DEFENDANT'S[1] MOTION TO DISMISS

Defendant "State of Oklahoma, *ex rel.*, the Board of Regents for the Regional University System of Oklahoma, *ex rel.* University of Central Oklahoma," (hereinafter "Defendant," "State," "University," or "UCO"), by and through Assistant Attorneys General Jeb Joseph and Lauren Ray, hereby moves to dismiss Plaintiffs' Lawsuit[2] [Doc. 1-5] in its entirety pursuant to Fed. R. Civ. P. 12(b)(1) and (6).

---

[1] The proper designation of the legal entity that is the Defendant in this matter is the State of Oklahoma *ex rel.* the Board of Regents for the Regional University System of Oklahoma. References to the University of Central Oklahoma or any of its constituent parts, offices, or divisions, are misnomers.

[2] Plaintiffs filed a Petition in Oklahoma County District Court on or about April 12, 2021. Plaintiffs then filed an Amended Petition in Oklahoma County District Court on or about April 14, 2021. Defendant removed that action to this Court on May 3, 2021.

## STATEMENT OF THE CASE

Plaintiffs[3] are, or were, students at UCO. According to their Lawsuit, they were members of the UCO cheerleader team ("Team") during the 2020-2021 school year. During that school year, some kind of team initiation event(s) took place, and UCO determined that the actions during one event constituted hazing in violation of the UCO Student Code of Conduct. The University imposed sanctions on (a) the Team, and (b) separately on some of the students individually. These sanctions were imposed by the UCO Office of Student Conduct after Student Conduct officials interviewed members of the cheer team and gathered evidence. Once sanctions were imposed, the affected individuals and the affected entity each had the right to an appeal. This appeal hearing for the Team has not been held; no individual student's appeal hearing has been held. Although the University's internal processes had not concluded, Plaintiffs filed the instant Lawsuit claiming violations of their rights to due process under the United States Constitution and the Oklahoma State Constitution.[4] The Lawsuit includes no enumerated counts, but does state that Plaintiffs seek injunctive relief against UCO

---

[3] Plaintiffs conflate two separate, yet distinct, categories of sanction targets, by denominating their group of twenty-two (22) individual student Plaintiffs collectively as the "CHEER TEAM." [Doc. 1-5, pp. 1-2] In fact, under the UCO Student Conduct process, separate sanctions were announced against each of several individual students, and separately against the UCO organization that is the entity known as the UCO Cheer Team. The group of students and the UCO Cheer Team organization itself are not equivalent. In fact, students' rights to appeal the Student Conduct Office sanctions, and the cheer team organization's rights to appeal sanctions were separate and distinct, and were pursued separately. But in the case of both the students' individual appeals, and the team entity's appeal, the process was unfinished.

[4] Plaintiffs also claim UCO's sanctions violate "Title IX," [presumably Title IX to the Educational Amendments of 1972, 20 U.S.C. 1681-1688] and "invidiously discriminate against Plaintiffs as female athletes."

to prevent the University from enforcing any sanctions which have already been rendered, and to prevent the University from proceeding any further with its student conduct processes.

The University of Central Oklahoma, as an arm of the State of Oklahoma, is an entity of public higher education. The UCO Cheer Team is a constituent organization operating within the confines and under the auspices of the University. The Plaintiffs, as students of UCO, were all bound by the school's Student Code of Conduct. The Lawsuit fails to establish any court's jurisdiction, and fails to state a claim upon which relief may be granted. For the foregoing reasons, the lawsuit should be dismissed in its entirety.

## STANDARD OF REVIEW

Fed. R. Civ. P. 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter." A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction." *Groundhog v. Keller*, 442 F.2d 674, 677 (10th Cir.1971). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Basso v. Utah Power and Light Co.*, 495 F.2d 906, 909 (10th Cir.1974), and *Eagle Air Med Corp. v. Martin*, No. CIV.A. 08-CV-00532LT, 2009 WL 651800 (D. Colo. Mar. 12, 2009) aff'd, 377 F. App'x 823 (10th Cir. 2010).

Fed. R. Civ. P. (12)(b)(6) empowers a court to dismiss a complaint for failure to state claims upon which relief may be granted. Motions to dismiss are properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and those factual allegations "must be enough to raise a right to relief above the

speculative level." *Id.* at 1965, 1974 (citations omitted). The Supreme Court's standard for 12(b)(6) dismissal is "whether the complaint contains 'enough facts to state a claim that is plausible on its face.'" *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Tombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)). The court should "look for plausibility in th[e] complaint." *Alvarado v. KOBTV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *Bell Atl.*, 127 S. Ct. at 1974). The specific allegations in the complaint must be reviewed "to determine whether they plausibly support a legal claim for relief." *Id.* at 1215, n.2; *see also Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007). Entitlement to relief requires more than just "labels and conclusions or a formulaic recitation of the elements" to state a cause of action. *Robbins v. State of Okla., et al.*, 519 F.2d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atl.*, 127 S. Ct. at 1965). In deciding a 12(b)(6) motion a court must accept all the well-pleaded allegations of the complaint as true, and must construe the allegations in the light most favorable to the claimant. *Id.* at 1965; *Alvarado v. KOBTV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007); *Moffett v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1231 (10th Cir. 2002).

However, the court must also ensure that each defendant has adequate notice as to the facts and allegations entitling Plaintiff to the requested relief. *See* Fed. R. Civ. P. (8)(a)(2) ("A pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief"); *Bell Atlantic, supra.* In this regard it is important "that the complaint make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against . . . her, as distinguished

from collective allegations against the [defendants as a group]." *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (citation omitted) (emphasis in original).

A court is not required to accept as true allegations that are conclusory in nature. *Erikson v. Pawnee County Bd. of County Comm'rs*, 263 F.3d 1151, 1154-55 (10th Cir. 2001) (citations omitted). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1109-10 (10th Cir. 1991). Similarly, "in analyzing the sufficiency of the plaintiff's complaint, the court need accept as true only the plaintiff's well-pleaded factual contentions, not h[er] conclusory allegations." *Id. See also Bryan v. Stillwater Bd. of Realtors*, 578 F.2d 1319, 1321 (10th Cir. 1977) ("allegations of conclusions or opinions are not sufficient when no facts are alleged by way of the statement of the claim."); *Oppenheim v. Sterling*, 368 F.2d 516, 519 (10th Cir. 1966) ("unsupported conclusions of the pleader may be disregarded").

## ARGUMENT AND AUTHORITY

**PROPOSITION I: UNRIPE CLAIMS PRECLUDE JURISDICTION.**

A court's jurisdiction depends on a claim's ripeness. A case involving constitutional issues must generally be ripe for adjudication in order to establish subject matter jurisdiction of the federal courts. *MacDonald, Sommer & Frates v. Yolo County*, 477 U.S. 340, 106 S. Ct. 2561 (1986); *Patrick Media Grp., Inc. v. City of Clearwater*, 836 F. Supp. 833, 836 (M.D. Fla. 1993). "The issue whether a claim is ripe for review bears on the court's subject matter jurisdiction under Article III of the Constitution." *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1498-99 (10th Cir. 1995). "[J]udicial review is premature when an agency has yet to complete its

work by arriving at a definite decision." *Felmeister v. Off. of Att'y Ethics, a Div. of the New Jersey Admin. Off. of the Cts.*, 856 F.2d 529, 535 (3d Cir. 1988).

In order for a claim to be ripe, it must present a live controversy, ripe for determination. *Renne v. Geary*, 501 U.S. 312, 322, 111 S. Ct. 2331 (1991). A court's ripeness inquiry "focuses not on whether the plaintiff was in fact harmed, but rather whether the harm asserted has matured sufficiently to warrant judicial intervention. In short, [r]ipeness doctrine addresses a timing question: when in time is it appropriate for a court to take up the asserted claim." *Kan. Judicial Review v. Stout*, 519 F.3d 1107, 1116 (10th Cir. 2008). Further, in evaluating whether a case is "ripe," "the central focus is on whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." *Initiative and Referendum Inst. v. Walker*, 450 F.3d 1082, 1097 (10th Cir. 2006).

In *Williamson County*, a planning commission had rejected the plaintiff's development plat by retroactively applying new regulations. Nonetheless, the Court held that the plaintiff's claim for regulatory taking was not ripe because the plaintiff had failed either to file for a variance from the new zoning regulation or to pursue the possibility of changes in the plat, which might have brought the development at least partially into compliance with the planning commission's order. *Williamson County*, 473 U.S. at 186–94, 105 S. Ct. at 3116–21. Herein, Plaintiffs confess in their Lawsuit that they have not completed the UCO process. Just as the *Williamson* plaintiff had not pursued the variance or appeal process, so, too the instant Plaintiffs have not completed their appeal process within the UCO Student Conduct framework.

Plaintiffs' claims are simply not ripe, as the UCO process has not been completed. After sanctions are announced, the affected individuals (and/or student organizations) have

~ 6 ~

the opportunity to appeal the Student Conduct Office's determinations. Plaintiffs' filing of the Lawsuit (which halted any appeal) interrupted the UCO Student Conduct process. At Plaintiffs' requests, UCO held the appeal hearing process in abeyance.

Plaintiffs' Lawsuit alleges that they received notice (a) that "hazing allegations had been made," [Doc. 1-5, p. 4, ¶ 10]; (b) that "investigation and fact interviews were going to be conducted," [*id.* at ¶ 11]; (c) that "[d]uring the period of March 1-18, 2021 . . . the investigation took place" including "interviews with some team members," [*id.* at ¶ 12]; (d) that UCO made findings [*id.* at ¶ 13]; (e) that the students were apprised, in writing, of the determinations [*id.* at ¶ 15]; (f) that appeals of the determinations were available [*id.* at ¶¶ 19, 21, and 22]; that an appeal hearing had been scheduled for April 13, 2021 to hear the team sanctions appeal [*id.* at ¶¶ 21, 22, and 31]; and (g) that the appeal hearing did not yet take place [*id.* at ¶¶ 22, 24, and 31]. On the face of the Lawsuit, it is clear that UCO's Student Conduct process, (and thus, State-provided Due Process) was in progress when Plaintiffs filed their Petition in Oklahoma County District Court on April 12, 2021. UCO had not completed its process; a final and definitive decision had not yet been reached. Plaintiffs admit as much through the factual averments in their Lawsuit.

The fact that the UCO process had not yet completed means that Plaintiffs' claims are not ripe. Until the UCO hearing and appeal process concludes, Plaintiffs' claims are not ripe, as such appeals could modify or reverse the sanctions earlier imposed by the Student Conduct Office. This lawsuit should be dismissed.

## PROPOSITION II. THE LAWSUIT FAILS TO COMPLY WITH THE TORT CLAIMS ACT.

Plaintiff's Lawsuit appears to seek some sort of retroactive injunctive relief, seemingly asking this Court for an order finding that the sanctions imposed were inappropriate, and that the students were denied due process. Plaintiff's rest their Lawsuit, in part, on Art. II, § 7 of the Oklahoma Constitution. However, Plaintiffs fail to comply with the Oklahoma Government Tort Claims Act, ("GTCA" or "Act"). The GTCA is the exclusive remedy for a claim against a governmental entity for tort claims. *Tuffy's, Inc. v. City of Okla. City*, 2009 OK 4, ¶ 7, 212 P.3d 1158, 1163. This includes torts based on provisions of the Oklahoma Constitution. Title 51 Okla. Stat. § 152(17). The GTCA provides that the State of Oklahoma and its political subdivisions (like UCO) are immune from liability for torts, except in cases where that immunity is waived to the extent and manner provided in the Act. 51 OKLA. STAT. tit. § 152.1.

In order to sue under the GTCA, a plaintiff must comply with procedural rules. *Crockett v. Cent. Okla. Transp. & Parking Authority*, 2010 OK CIV APP 30, ¶ 7, 231 P.3d 748, 752. The GTCA requires that a person with a claim against the state or political subdivision must present notice of that claim to the state or political subdivision for appropriate relief. 51 OKLA. STAT. tit. § 156(A). The person must present written notice of the claim within one (1) year of the date that the loss occurs. *Id.* § 156(B) and (C). Otherwise, the claim is forever barred. *Id.* A person may not sue the state or political subdivision unless the claim is denied in whole, or, in part. 51 OKLA. STAT. tit. § 157(A). A claim is deemed denied if there is no response within ninety (90) days. *Id.* A plaintiff cannot sue unless he or she has given valid notice, and the action is commenced within 180 days after the denial of the claim. 51 OKLA. STAT. tit. §

157(B). The notice shall state the date, time, place and circumstances of the claim and the identity of the state agency or agencies involved. 51 OKLA. STAT. tit. § 156(E). Strict compliance with the GTCA filing provisions is required, and "expiration of the 180-day time period in § 157(B) operates to bar judicial enforcement of the claim against the government to which the Legislature waived sovereign immunity." *Shanbour v. Hollingsworth*, 1996 OK 67, ¶ 7, 918 P.2d 73, 75 (*citing Cruse v. Atoka Bd. of Cnty. Comm'rs*, 1995 OK 143, ¶ 16, 910 P.2d 998, 1004-05).

Plaintiffs do not allege compliance with the GTCA. The Lawsuit makes no mention of service of any claim upon UCO or any other State entity. Plaintiffs filed suit on April 14, 2021, and April 16, 2021, without first giving proper notice or making a written claim as required by the GTCA. Because Plaintiffs failed to file a notice of tort claim prior to instituting their Lawsuit, claims based on State law are void and should be dismissed.

**PROPOSITION III: PLAINTIFFS' LAWSUIT FAILS TO STATE A CLAIM.**

**a. Due Process under the United States and Oklahoma Constitutions**

Oklahoma's Due Process Clause, OKLA. CONST. art. II, § 7, is coextensive with its federal counterpart, although there may be situations in which the Oklahoma provision affords greater due process protections than its federal counterpart. *Oklahoma Corrections Professional Ass'n, Inc. v. Jackson*, 2012 OK 53, n. 13, 280 P.3d 959, 963. The Oklahoma Supreme Court has observed that:

> Procedural due process of law contemplates a fair and open hearing before a legally constituted court or other authority with notice and an opportunity to present evidence and argument, representation by counsel, if desired, and information concerning the claims of the opposing party with reasonable opportunity to controvert them.

*Van Horn Oil Co. v. Oklahoma Corp. Comm'n*, 1988 OK 42, 753 P.2d 1359, 1362 (*citing Jackson v. Ind. School Dist. No. 16*, 648 P.2d 26, 30 (Okla.1982)).

Generally, the Due Process Clause does not, by itself mandate, any particular form of procedure. *Powers v. District Court of Tulsa County*, 2009 OK 91, n. 42, 227 P.3d 1060, 1074. The Oklahoma Supreme Court explained in *Wood v. Independent Sch. Dist. No. 141 of Pottawatomie County*, 1983 OK 30, 661 P.2d 892, 896, and again in *Daffin v. State ex rel. Dept. of Mines*, 2011 OK 22, ¶ 21, 251 P.3d 741, 748, that the United States Supreme Court, in *Mathews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893 (1976), established a balancing test to determine the constitutional sufficiency of the administrative procedures involved. As the *Matthews* Court put it:

> . . . our prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *See e.g., Goldberg v. Kelly*, supra, 397 U.S. [254] at 263–271, 90 S.Ct. [1011] at 1018–1022 [25 L.Ed.2d 287 (1970)].

*Mathews v. Eldridge*, 424 U.S. 319, 334–335, 96 S. Ct. 893, 903.

As stated above, on the face of the Lawsuit, it is clear that UCO's Student Conduct process, (and thus, State-provided Due Process) was in progress when Plaintiffs filed their Petition in Oklahoma County District Court on April 12, 2021. The fact that UCO halted its process in response to Plaintiffs' litigation, and Plaintiffs' entreaties to halt the appeal hearing process, is not evidence that UCO denied Plaintiffs their Due Process of law. Further, there is no factual allegation that UCO, its Student Conduct Office, or the State of Oklahoma had any prejudice or malice towards the Plaintiffs or the UCO Cheer Team entity. Given the

factual allegations contained within the four corners of Plaintiffs' Lawsuit, and the absence of allegations of bias or partiality, it is clear that the Plaintiffs received notice, an opportunity to be heard, a decision by an impartial decision maker, and the chance to appeal that decision to an internal appellate body. Due Process was afforded, and the Lawsuit should be dismissed.

### b. Title IX

It is unclear if Plaintiffs intend their allusion to Title IX [Doc. 1-5, p. 8, ¶ 27] as a stand-alone claim. Out of an abundance of caution, Defendant addresses it squarely. Plaintiffs allege somewhat obliquely (and without specification) that Plaintiffs' hazing activities would not be regarded as hazing (and thus not punished) if committed by men. *Id.* Essentially, Plaintiffs argue a disparate impact theory under Title IX. However, in *Alexander v. Sandoval*, the Supreme Court concluded that under Title VI, (on which Title IX is patterned), there is no private right of action to enforce disparate impact claims. 532 U.S. 275, 280–81 (2001).

Title IX claims may not be based on a disparate impact theory. *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001); *Save Our Valley v. Sound Transit*, 335 F.3d 932, 934 (9th Cir. 2003)). There must be factual matter separate and apart from disparate impact that plausibly alleges intentional gender discrimination. Courts that have considered the question have routinely held *Alexander v. Sandoval*'s prohibition against disparate impact claims in Title VI cases applies equally to Title IX cases. *Yu v. Vassar Coll.*, 97 F. Supp. 3d 448 (S.D.N.Y 2015); *Weser v. Glen*, 190 F. Supp. 2d 384, 395 (E.D.N.Y 2002)). Since *Sandoval*, courts have routinely dismissed official policy claims based on disparate impact for the failure to plausibly plead discriminatory intent under Rule 12(b)(6).

Disparate impact claims premised on Title IX are void. Further, Plaintiffs' Lawsuit alleges no set of facts showing that any UCO policy or procedure is intentionally discriminatory against female students. Accordingly, to the extent a claim premised on Title IX might be discerned from the Lawsuit, the Court should dismiss it.

**PROPOSITION IV:   PLAINTIFFS' LAWSUIT LACKS SUFFICIENT FACTUAL AVERMENTS.**

There are many Plaintiffs, but scant details are alleged. For example, of the twenty-two (22) named Plaintiffs, most are only mentioned (a) in the case caption [Doc. 1-5, p. 1], (b) in the opening paragraph [*id.*], and (b) in the final paragraph [*id.* at p. 11]. One of the Plaintiffs is mentioned substantively, (but without naming her), in paragraphs 18-20 of the Lawsuit. However, it appears there are no substantive allegations or factual averments particular to any of the other Plaintiffs. There are no allegations that any of the other individual students were individually sanctioned by UCO, or that any of those students timely perfected appeals within the UCO process. The Lawsuit fails to set forth what was done 'to whom,' in line with *Robbins v. State of Oklahoma*. The factual averments, (as distinguished from sweeping allegations and generalities), are absent. The generalities used in Plaintiff's Lawsuit do not put UCO on notice of what the University has supposedly done to each Plaintiff. Dismissal is appropriate.

WHEREFORE, Defendant, the University of Central Oklahoma, respectfully requests the Court dismiss Plaintiffs' Lawsuit in its entirety, and for any such other relief as the Court deems appropriate.

Respectfully submitted,

/s/ Jeb Joseph
**JEB JOSEPH, OBA#19137**
**LAUREN RAY, OBA#22694**
Assistant Attorneys General
Oklahoma Attorney General's Office
Litigation Section
313 NE 21st Street
Oklahoma City, OK 73105
Telephone: 405.521.3921
Facsimile: 405.521.4518
Email: jeb.joseph@oag.ok.gov
lauren.ray@oag.ok.gov
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of June 2021, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing. I further that a true and correct copy of the foregoing document was sent via the ECF System to the counsel of record:

/s/ Jeb Joseph
Jeb Joseph